IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| IT AVIATION SOLUTIONS, LLC, | § § § | |
| *Plaintiff*, | § § | 5-19-CV-01256-FB-RBF |
| vs. | § § | |
| KCI ENTERPRISES, INC., | § § | |
| *Defendant*. | § § | |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

**To the Honorable United States District Judge Fred Biery:**

This Report and Recommendation concerns the Cross-Motions for Summary Judgment filed by Plaintiff IT Aviation Solutions, LLC ("ITAS") and Defendant KCI Enterprises, Inc. *See* Dkt. Nos. 45 & 46. All pretrial matters have been referred for resolution, pursuant to Rules CV-72 and 1 of Appendix C to the Local Rules for the United States District Court for the Western District of Texas. *See* Dkt. No. 15. Authority to enter this recommendation stems from 28 U.S.C. § 636(b)(1)(B).

For the reasons set forth below, the Motions, Dkt. No. 45 & 46, should be **GRANTED IN PART** such that Defendant KCI should be granted judgment as a matter of law on ITAS's breach-of-contract claim and Plaintiff ITAS should be granted judgment as a matter of law on its quantum meruit claim. ITAS, however, hasn't established the amount of its damages at this juncture. The Motions should be denied in all other respects.

**Factual and Procedural Background**

Plaintiff ITAS is a software-development company that licenses a program, known as the Management Information System for Airlines ("MISA"), to third parties in the aviation industry.

*See* J. Hutchins Dep. (Dkt. No. 45-4 at 7-14) at 9:25-10:7; 18:8-19:12. The MISA, as described, is capable of, among other things, integrating data necessary for flight operations, maintenance, employee training, payroll, human resources, accounting, purchasing and receiving, and inventory management—all to allow central management through a single software system. *See id*. at 22:18-23:12; 24:1-24:12.

On July 1, 2010, ITAS and Defendant KCI—an aircraft-repair business—executed a Software License Agreement through which ITAS granted KCI a nonexclusive, nontransferable license to use the MISA for an initial five-year term, subject to automatic renewal for subsequent one-year terms "unless [KCI] provides written notice of non-renewal to [ITAS] prior to the expiration of the then current term." Software License Agreement (Dkt. No. 47-1) ¶¶ 2-3. In exchange for the license, KCI agreed to pay an initial fee of $50,000, with $25,000 tendered at the contract's execution and the remaining $25,000 paid in equal monthly installments over the first 12 months of the contract. *See id.* ¶ 3A (incorporating Ex. A). In addition to the initial fee, KCI agreed to pay a monthly $5,000 "license / maintenance fee" on the first of each month, subject to an interest charge for any late payments. *See id.* After the parties executed the Software License Agreement, ITAS loaded the MISA onto KCI's computers and trained KCI's employees to use it. *See* Hutchinson Dep. 24:13-25:6.

At some point[1] during the Software License Agreement's initial term, KCI discontinued making monthly payments to ITAS. *See* Dkt. No. 46-2 at 77 (discussing amounts past due); J. Hutchins Dep. 34:12-36:18. KCI notified ITAS in writing of its intent not to renew the Agreement. This happened on June 30, 2015, one day before the Software License Agreement's initial term was set to expire and during ongoing negotiations over ITAS's claim for past-due

---

[1] KCI says the relevant point was in 2014. ITAS says it was as far back as 2012. Resolving this disagreement, however, isn't material to resolving the present motions.

2

amounts. Dkt. No. 46-2 at 70-71.[2] Following this cancellation, ITAS demanded that KCI "delete the MISA software from all of [its] servers and other computers immediately," advising KCI that in light of the nonrenewal KCI "no longer ha[s] the right to use the software." Dkt. No. 46-2 at 4 (Hutchins Jul. 29, 2015, letter). KCI apparently never confirmed deletion of the software. *See* Hutchins Dep. 53:16-54:8.

Nearly one year later, on April 21, 2016, the parties entered into a Settlement Agreement regarding KCI's alleged "fail[ure] to make payments to ITAS under the Software [License] Agreement" and ITAS's associated claim for $423,490,10. Settlement Agreement ¶¶ B & C (Dkt. No. 47-1 at 15-22). In exchange for a payment of $259,852.78, which KCI committed to pay in monthly installments, ITAS agreed to "forbear from exercising its rights and remedies under the Software [License] Agreement" or under applicable laws until May 1, 2019, or such time as the entire settlement amount was paid in full. *Id.* ¶¶ 1-4. The Settlement Agreement further provided that upon payment of the full settlement amount, ITAS would "release KCI from the balance of the Claimed Amount, including all principal interest and late fees." *Id.* ¶ 4.

A separate section of the Settlement Agreement further discussed the release. It provided as follows:

> **8.     Waiver and Release of All Claims and Defenses Against KCI.** Upon complete payment of the Settlement Amount . . . ITAS . . . completely release[s] and forever discharge[s] KCI . . . from any and all past, present, or future claims, demands, obligations, . . . [etc.] of any nature whatsoever, whether known or unknown, foreseen or unforeseen, matured or unmatured, discoverable or undiscoverable, which ITAS had, now has, or which may hereafter accrue, or

---

[2] The Court is directed to an email in the record regarding this cancellation. Although the email references an attached document entitled "Notice of Contract Termination," no such attachment was provided for the Court's review. Regardless, ITAS argues—and KCI concedes—that this email terminated the Software License Agreement. *See, e.g.*, KCI Repl. (Dkt. No. 51) at 7 (explaining that the License Agreement was "subsequently terminated").

otherwise be acquired, on account of, or may in any way be related to the Software [License] Agreement.

*Id.* ¶ 8.

The Settlement Agreement provided that if KCI failed to timely tender the entire settlement amount, then "the entire Pending Balance and Reinstated Interest shall, upon written demand of ITAS, become immediately due and payable" and "ITAS shall be free to exercise any and all remedies available to it under the Software [License] Agreement, applicable law, or in equity, as the result of any then-existing claim for [amounts due under the Software License Agreement]." *Id.* ¶ 4.

In the Settlement Agreement ITAS also preserved its rights under the Software License Agreement in the event of a default of the Settlement Agreement:

> **7.** **Remedies in Event of Default.** Notwithstanding anything to the contrary set forth herein, ITAS shall have the rights and remedies set forth in the Software [License] Agreement and any other document previously, now or hereafter executed . . . regarding the Software [License] Agreement, the rights and remedies contained in this [Settlement] Agreement (including, without limitation Section 4 hereof), and all rights and remedies in equity or existing under applicable law.

*Id.* ¶ 7.

Finally, pursuant to Paragraph 10 of the Settlement Agreement, the parties "reaffirmed and incorporated" the then-terminated Software License Agreement to govern their relationship going forward, except that the Settlement Agreement would control if there were any inconsistencies between it and the Software License Agreement:

> The Software [License] Agreement and all other agreements, documents, and writings between or among any or all of the parties hereto, are expressly reaffirmed and incorporated by this reference, and the Software [License] Agreement and all other agreements, documents, and writings between or among any or all of the parties hereto, are expressly reaffirmed and incorporated by this reference, and shall remain in full force and effect and continue to govern and control the relationship between the parties hereto except to the extent they are inconsistent with, amended or superseded by [the Settlement Agreement]. To the

extent of any inconsistency, amendment or superseding provision, this [Settlement] Agreement shall govern and control.

*Id.* ¶ 10.

KCI timely tendered the full settlement amount as required by the Settlement Agreement. *See* C. Koukoulis Dep. (Dkt. No. 46-2 at 18-31) 93:8-15; J. Hutchins Dep. 52:10-12. But then, at least according to ITAS, a new development seriously undermined the parties' relationship.

On or about April 11, 2018, KCI emailed ITAS with a question regarding use of the MISA program. *See* Hutchins Dep. 54:1-56:4 & Ex. 4 to Hutchins Dep. (Dkt. No. 45-4 at 131). ITAS contends that it wasn't until KCI sent this email that ITAS learned KCI was continuing to use the MISA program. *See id.* KCI apparently never stopped using the MISA software up until at least August 2021. *See* C. Koukoulis Dep. 41:13-43:7, 86:16-87:10 & Dkt. No. 45 at 3 (conceding that KCI "continues to use [the MISA software]" but is "in the process" of replacing it.).

Thereafter, ITAS sued KCI for its continued use of the MISA software without authorization and without remitting a monthly license fee. *See* Dkt. No. 1. ITAS's live Complaint raises claims against KCI for (1) breach of the Settlement Agreement, which reaffirmed and incorporated the Software License Agreement by reference; (2) quantum meruit; (3) conversion; and (4) violation of the Texas Theft Liability Act (TTLA), Tex. Civ. Prac. & Rem. Code § 134.001 *et seq. See id.*

KCI now moves for summary judgment on all claims asserted by ITAS, *see* Dkt. No. 45, contending, in large part, that the release in Section 8 of the Settlement Agreement bars ITAS's claims. ITAS moves for partial summary judgment on its claims for breach of contract and quantum meruit, Dkt. No. 46.

## Analysis

As discussed further below, the Settlement Agreement unambiguously resolved all claims related to KCI's alleged failure to pay amounts then past due and owed under the Software License Agreement. But the Settlement Agreement didn't release KCI from ITAS's claims regarding KCI's *unauthorized* use of the MISA. At the same time, the Software License Agreement can't and doesn't govern the present dispute, notwithstanding the Settlement Agreement's incorporation of it by reference. The Software License Agreement was terminated at the time the parties executed the Settlement Agreement, and the incorporation didn't somehow reinvigorate it. Moreover, nothing in the Software License Agreement addressed the parties' post-termination obligations. Accordingly, ITAS's breach-of-contract claim premised on a breach of the Settlement Agreement fails as a matter of law.

Summary judgment, however, is warranted in ITAS's favor on its quantum meruit claim, although the Court can't calculate the amount of damages at this juncture. Its undisputed that KCI continued to use the MISA long after it terminated the Software License Agreement and without paying any fees for that use.

Finally, KCI's motion for summary judgment on ITAS's claims for conversion and violation of the TTLA should be denied on the present briefing.

    **A.**    **The Subject Matter of the Present Dispute Isn't Addressed by Either the Settlement Agreement or the Software License Agreement**.

The present dispute centers on KCI's continued use of the MISA well after KCI terminated the Software License Agreement. There's no dispute that KCI, on June 30, 2015, properly exercised its option not to renew the Software License Agreement and, hence, terminated that agreement. *See* Dkt. No. 46-2 at 70-71 (Termination email); Software License Agreement ¶ 3C (permitting KCI to terminate the Agreement by providing written notice of

nonrenewal prior to the expiration of the current term). Accordingly, as of July 1, 2015, KCI was no longer licensed to use the MISA software. It's undisputed, however, that KCI nevertheless continued to use the MISA for quite some time without a license to do so.

The Settlement Agreement, although it purports to incorporate the terms of the Software License Agreement, simply does not contemplate a situation in which KCI continued to use the MISA. There are no provisions in the Settlement Agreement addressing payment terms, or any other terms, for such post-termination continued use. And nothing in the Settlement Agreement even purports to reinvigorate the terminated software license or grant a new license to KCI to permit use of the MISA after the Software License Agreement's termination. *Cf.* Software License Agreement ¶¶ 2-3 (incorporating Ex. A's payment terms). The only possible source of such terms would be the Settlement Agreement's incorporation by reference of the terms of the terminated Software License Agreement.

But nothing in the Settlement Agreement, including its incorporation of the Software License Agreement's terms, evinces an intent to renew the terms of the Software License Agreement to govern KCI's use of the MISA after the Software License Agreement's termination. Rather, the Settlement Agreement repeatedly and consistently reflects only an intent to have the Software License Agreement's provisions available as a remedy in the event KCI didn't timely fulfill its obligations to pay past-due amounts then owed under the Software License Agreement. *E.g.*, Settlement Agreement ¶¶ B, C, 4, 8. Nowhere do either the Settlement Agreement or Software License Agreement provide terms that would survive termination of the Software License Agreement followed by full payment under the Settlement Agreement along with further unauthorized use of the MISA. For example, in such a situation was KCI required to pay a new initial $50,000 fee? Or was it simply allowed to continue paying monthly maintenance

7

fees? The vague incorporation-by-reference language in the Settlement Agreement doesn't address this issue. Nor does the Software License Agreement impose any post-termination obligations such as a duty to delete software or otherwise not use the MISA after the license's expiration. Simply put, no express contract governs the present dispute, and summary judgment is warranted in KCI's favor on ITAS's breach-of-contract claim.

The fact that no express contract governs KCI's continued use of the MISA software, however, doesn't necessarily render ITAS without a remedy. "Quantum meruit is an equitable remedy[,] which does not arise out of a contract." *Vortt Expl. Co., Inc. v. Chevron U.S.A., Inc*., 787 S.W.2d 942, 944 (Tex. 1990). It is "based upon the promise implied by law to pay for beneficial services rendered and knowingly accepted." *Id.* (quotations omitted). As discussed further below, ITAS has established its quantum meruit claim as a matter of law, although it hasn't yet sufficiently established its damages.

B.   **KCI's Reliance on the Settlement Agreement's Release is Misplaced**.

Before moving to the quantum meruit claim, the release in the Settlement Agreement must be addressed. Contrary to KCI's contentions, the broad release in Paragraph 8 of the Settlement Agreement didn't provide KCI carte blanche to use the MISA.  Of course it is true that Paragraph 8 of the Settlement Agreement includes a broad release from all claims—past, present, or future. But the broad release is not without limit; the claims released were only those "on account of, or . . . in any way [ ] related to the Software [License] Agreement."

Texas law on releases provides that general categorical releases, such as this, must be "narrowly construed," and therefore it is only claims "clearly within the subject matter of the

8

release" that can be discharged by such a release.³ Here, KCI's use of the MISA software after it terminated the Software License Agreement and signed the Settlement Agreement isn't "clearly within the subject matter of the release" because claims stemming from that use aren't "related to" the terminated Software License Agreement. If this were not the case, the release would have the nonsensical effect of immunizing from any liability KCI's perpetual unlicensed use of the MISA. Given that nonsensical results are disfavored when contracts are interpreted, and given that the plain meaning of the Settlement Agreement read as a whole doesn't support such a strained reading, this reading of the contract is rejected. *See, e.g., Lane v. Travelers Indem. Co.*, 391 S.W.2d 399, 402 (Tex. 1965) (refusing to construe contract in manner that would lead to absurd results); *Reilly v. Rangers Mgmt., Inc.*, 727 S.W.2d 527, 530 (Tex. 1987) ("Courts will avoid when possible and proper a construction which is unreasonable, inequitable, and oppressive.").

It is not just avoiding absurdity that guides the Court's analysis. Reading the Settlement Agreement as a whole confirms that Paragraph 8's release isn't as broad as KCI urges. *See, e.g.*, *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983) (contract provisions considered with reference to the entire instrument). The Settlement Agreement's stated purpose was to resolve any disputes regarding KCI's alleged "fail[ure] to make payments to ITAS under the Software [License] Agreement" and ITAS's claim for $423,490,10 in amounts owed. *See* Settlement Agreement ¶¶

---

³ *Victoria Bank & Tr. Co. v. Brady*, 811 S.W.2d 931, 938 (Tex. 1991) (settlement agreement that released a party from "any and all claims and causes of action," "directly or indirectly attributable to the above-described loan transaction," related only to the initial loan described and didn't operate to release any claims relating to a subsequent line of credit); *see also Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 422 (Tex. 1984), *superseded by statute on other grounds* ("We must narrowly construe general, categorical release clauses."); *Baty v. ProTech Ins. Agency*, 63 S.W.3d 841, 850 & n. 7 (Tex. App.—Houston [14th Dist.] 2001, pet. denied) (op. on reh'g) (collecting cases relating to enforcement of various release provisions and holding that a release of claims relating to certain agreements didn't act as a release of unmentioned tort claims).

B & C. And Paragraph 4 provides that upon KCI's timely payment of the full settlement amount, "ITAS will release KCI from the balance of the Claimed Amount, including all principal, interest and late fees." *Id.* ¶ 4. Paragraph 4's specific language reflects that the parties intended to release KCI from any claims—past, present, or future—related to the *past-due amounts* owed under the Software License Agreement.[4] Paragraph 10, moreover, provides that "[n]otwithstanding anything to the contrary set forth herein, ITAS shall have . . . all rights and remedies in equity or existing under applicable law." This language, which conflicts with KCI's expansive reading of the release, counsels for a narrower reading of the release, especially given Texas law on releases. So does the fact that there is no material dispute that KCI apparently didn't disclose to ITAS during negotiations of the Settlement Agreement—and its broad release—that KCI was still using the MISA.

### C. Judgment as a Matter of Law is Warranted for ITAS on its Quantum Meruit Claim.

Having concluded that the Settlement Agreement didn't release KCI from claims connected to its unlicensed use of the MISA software and that no express contract governs this dispute, the Court must determine whether and to what extent ITAS may maintain its claim for quantum meruit. To recover on a quantum meruit claim, ITAS would need to establish that: (1) valuable services were rendered or materials furnished; (2) for KCI, the entity sought to be charged for those services or materials; (3) the services or materials were accepted by KCI,

---

[4] *See Coker*, 650 S.W.2d at 393 ("In harmonizing these provisions, terms stated earlier in an agreement must be favored over subsequent terms."); *Pathfinder Oil & Gas, Inc. v. Great W. Drilling, Ltd.*, 574 S.W.3d 882, 889 (Tex. 2019) ("Consistent with our long-established precedent that no one phrase, sentence, or section of a contract should be isolated from its setting and considered apart from the other provisions, a specific contract provision controls over a general one.") (quotations and brackets omitted); *In re Christian*, 597 B.R. 319, 324 (Bankr. N.D. Tex. 2019) ("Though the release language is broad and all-encompassing, it must be considered within the confines of the entire agreement.").

used and enjoyed by KCI; and (4) this occurred under such circumstances as reasonably notified the KCI that ITAS was expecting to be paid by KCI. *Vortt Expl. Co., Inc.*, 787 S.W.2d at 944. Each of these elements is established here as a matter of law based on evidence that is either uncontested or uncontestable.

ITAS provided services in the form of the MISA software from July 1, 2015, until approximately August 2021,[5] notwithstanding KCI's termination of the Software License Agreement and failure to pay any license fees for that time.[6] Given that federal aviation law would've prohibited KCI from discontinuing use of the MISA software without finding (and paying for) an alternative program, KCI directly benefited from this continued use. *See* Koukoulis Dep. 36:20-37:10. Finally, ITAS reasonably notified KCI that it expected to be paid for any continued use of the software after ITAS defaulted on its payments.[7]

ITAS's quantum meruit claim might raise preemption issues vis-a-vis the Federal Copyright Act.[8] But neither party has briefed the issue, and KCI hasn't argued preemption. The

---

[5] It's unclear when, or if, KCI stopped using ITAS's MISA software. As of August 12, 2021, KCI was "in the process" of replacing it with another software program. *See* C. Koukoulis Dep. 41:13-43:7.

[6] *See* Koukoulis Dep. 86:16-87:10; Software License Agreement ¶ 2 (granting KCI a nonexclusive license "in accordance with this License Agreement") & Ex. A ¶ 1 (providing for a "monthly license /maintenance fee" of $5,000).

[7] *See* Koukoulis Dep.43:8-22 (conceding that KCI understood that monthly payments for continued use of the MISA software would be required).

[8] *Compare Recursion Software, Inc. v. Interactive Intelligence, Inc*., 425 F. Supp. 2d 756, 769 (N.D. Tex. 2006) ("Courts generally find that claims for unjust enrichment and quantum meruit are preempted by the Copyright Act to the extent they are based on a defendant's violation of an exclusive right protected by the copyright law.") & *I.C. ex rel. Solovsky v. Delta Galil USA*, 135 F. Supp. 3d 196, 218-19 (S.D.N.Y. 2015) ("The crux of plaintiff's unjust enrichment and quantum meruit claims allege that defendants unjustly benefited from plaintiff's design, and they have used that design without paying plaintiff fair compensation. These allegations are not qualitatively different from her copyright infringement claim.") *with Schuchart & Assocs., Prof'l Eng'rs, Inc. v. Solo Serve Corp*., 540 F. Supp. 928, 948 (W.D. Tex. 1982) (concluding that the

Court, therefore, need not linger on this topic. *See, e.g.*, *Ace Elec. Contractors, Inc. v. Int'l Bhd. of Elec. Workers, Local Union No. 292*, 414 F.3d 896, 903 (8th Cir. 2005) (recognizing that "preemption questions concerning choice of forum are jurisdictional but preemption questions concerning only choice of law are waived if not timely raised"). Accordingly, summary judgment in ITAS's favor on its quantum meruit claim should be granted.

ITAS, however, hasn't proven its entitlement to the claimed royalty balance of $380,000 along with $320,136.86 in prejudgment interest. *See Tex. Oil Co. v. Barnes*, No. 01-93-00167-CV, 1994 WL 443660, at *2 (Tex. App.—Houston [1st Dist.] Aug. 18, 1994, no writ) (burden on party claiming quantum meruit to introduce evidence on the correct measure of damages). Although there's no dispute that the *Software License Agreement* provides for this measure of damages, ITAS's quantum meruit claim "does not arise out of [the] contract, but is independent of it." *Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 550 (5th Cir. 2010) (quotations omitted). Accordingly, while the $5,000 per month royalty fee may serve as evidence of the "reasonable value" of the MISA's use, it doesn't necessarily establish the correct measure of damages as a matter of law. *Id.* It's also unclear from the record whether or when KCI stopped using the MISA software. Finally, although ITAS would likely be entitled to recover prejudgment interest on any amounts recovered on its quantum meruit claim,[9] ITAS hasn't provided the Court with any

---

rights plaintiffs sought to enforce for quantum meruit weren't equivalent to the exclusive rights of the Copyright Act).

[9] *See U.S. for Use & Ben. of Lochridge-Priest, Inc. v. Con-Real Support Grp., Inc.*, 950 F.2d 284, 289 (5th Cir. 1992) ("Texas law allows a court to award prejudgment interest on a recovery in quantum meruit if the measure of the recovery was established as of a definite time and the amount of the recovery definitely determinable by a court under the rules of evidence and by reference to known standards of value. The interest commences from the date of the loss.") (citations and quotations omitted).

authority suggesting that the Software License Agreement's prejudgment interest provisions ought to govern. Accordingly, the Court can't calculate ITAS's damages at this juncture.

        **D.**      **KCI Has Failed to Establish Entitlement to Judgment as a Matter of Law on ITAS's Conversion and TTLA Claims.**

KCI's motion for summary judgment on ITAS's conversion and TTLA claims should be denied. To start, KCI's argument that the breadth of the release forecloses these claims as a matter of law is without merit, for the reasons discussed above. The Settlement Agreement released KCI from claims related to past-due amounts allegedly owed under the Software License Agreement. Given that ITAS's conversion and TTLA claims are premised on KCI's use of the MISA software after the termination of the Software License Agreement, summary judgment in KCI's favor on these claims isn't warranted on this ground.

  KCI similarly isn't entitled to summary judgment on ITAS's TTLA claim, at least based on the present briefing. Aside from citing the definitions of theft and appropriation under the TTLA, KCI hasn't provided the Court with any authority to support its argument that the TTLA can't as a matter of law provide a cause of action for software misappropriation where an owner is still able to license the software to others. Accordingly, KCI hasn't sufficiently pressed the issue to warrant summary judgment. *See, e.g.*, *Jones Bros., Inc. v. Sec'y of Labor*, 898 F.3d 669, 677 (6th Cir. 2018) (noting, "a party forfeits any allegations that lack developed argument").

ITAS's conversion claim, however, doesn't appear viable for a reason other than raised by KCI in its briefing. Under Texas law, a party may only convert physical property. *See Carson v. Dynegy, Inc.*, 344 F.3d 446, 456 (5th Cir. 2003). Moreover, ITAS's conversion and TTLA claims also raise questions for the Court about possible preemption by the Copyright Act.[10] As

---

[10] *See, e.g.*, *Spear Mktg., Inc. v. BancorpSouth Bank*, 791 F.3d 586, 598 (5th Cir. 2015) (software company's claim under TTLA was preempted by the Copyright Act); *Ledesma v. D.R. Horton,*

KCI hasn't asserted a preemption defense, this issue need not be explored further. *See, e.g.*, *Ace Elec. Contractors*, 414 F.3d at 903.

### Conclusion and Recommendation

For the reasons discussed above, it is recommended that the District Court **GRANT IN PART** the Motions for Summary Judgment, Dkt. No. 45 & 46, such that Defendant KCI should be granted judgment as a matter of law on ITAS's breach-of-contract claim, and Plaintiff ITAS should be granted judgment as a matter of law on its quantum meruit claim. The Motions should be denied in all other respects.

Within **21 days** after the date of this Report and Recommendation, the parties should meaningfully confer and file a joint advisory that addresses (1) whether and by what authority the Court can award damages on ITAS's quantum meruit claim in this posture or, rather, whether and by what authority a fact issue exists such that the matter is more appropriately addressed at trial; (2) whether and to what extent ITAS desires to proceed with its conversion and TTLA claims in light of the above, and the fact that ITAS may not recover twice for the same injury; and (3) whether, in light of the above recommendation, the parties desire to engage in mediation to resolve the remainder of the case. To the extent the parties can't agree on a particular issue, they should provide their respective positions in the joint advisory.

### Instructions for Service and Notice of Right to Object/Appeal

The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as

---

*Inc.*, No. SA-08-CA-128-OG, 2008 WL 1912531, at *2-3 (W.D. Tex. Apr. 29, 2008) (holding plaintiff's conversion and TTLA claims preempted where the "gravamen" of the complaint was that defendant used, copied, and distributed the software without plaintiff's permission and not that plaintiff asked defendant to return copies of the physical media containing the program and defendant failed to do so).

a "filing user" with the clerk of court, or (2) by mailing a copy by certified mail, return receipt requested, to those not registered. Written objections to this report and recommendation must be filed **within fourteen (14) days** after being served with a copy of same, unless this time period is modified by the district court. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The objecting party shall file the objections with the clerk of the court, and serve the objections on all other parties. A party filing objections must specifically identify those findings, conclusions, or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusory, or general objections. A party's failure to file written objections to the proposed findings, conclusions, and recommendations contained in this report shall bar the party from a *de novo* determination by the district court. *Thomas v. Arn*, 474 U.S. 140, 149-52 (1985); *Acuña v. Brown & Root, Inc.,* 200 F.3d 335, 340 (5th Cir. 2000). Additionally, failure to timely file written objections to the proposed findings, conclusions, and recommendations contained in this report and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

    **IT IS SO ORDERED**.

    SIGNED this 27th day of April, 2022.

    RICHARD B. FARRER
    UNITED STATES MAGISTRATE JUDGE